Good morning, Your Honors. Good morning. Dennis Reardon, appearing for Defendant and Appellant Lewis. This is a very important case, and it conceitedly raises issues of first impression in this circuit. I think it can be reduced to two questions. The first, and I'll deal with this somewhat differently than I did in the brief, is simply if this were a civil case, on this record, would Mr. Lewis be immune from civil liability for an Eighth Amendment violation of Harry Long's rights, which is allegedly based on a shooting of Mr. Long by Mr. Lewis during a prison disturbance? If the answer to that question is yes, then we reach the question of whether the jurisprudence of this court, which I believe absolutely supports the finding of good faith immunity in the civil context, whether it has equal applicability to the very same alleged Eighth Amendment violation in a criminal context. Well, you concede there's no direct authority to apply the summary judgment standard to the criminal proceeding, correct? I agree, Your Honor, and I would say this. We are not alleging a summary judgment standard because that admittedly almost loads the argument. That's a term that you use in the civil context. But what we have is this statement, and we can puzzle it through. The United States Supreme Court has said that you have the same protection in criminal cases based on fair warning, a public official does, that that public official enjoys under the good faith immunity doctrine in civil cases. And it uses the word same protection. So we have that language, and we say, well, what does that mean? As the court points out, as you point out, Your Honor, in a civil case you have a summary judgment motion based on a good faith immunity claim. I guess what I'm saying here is that assuming that I accept this, but how would we do this in a criminal case from the standpoint that it would seem that in a summary judgment, obviously the parties present their papers and the court reviews all of that and makes a determination on that. In this context, it would seem to me for the court to decide what you want the court to decide, it would have to hear all of the evidence and then decide the issue. And why wouldn't it be the same that if it's a fair warning that the jury hears all the evidence, that the instructions are such that he would be entitled as a defense, and then either at the end of the government's case they either haven't shown a crime has been committed because of that. Because they're two different things. And, Your Honors, I certainly don't want to breach a rule of the court, but there is a sense of reality that we can import to this by saying that this court, en banc, has struggled with this very issue and issued an extremely lengthy opinion on these same issues. It is not precedential because it was vacated. But the – and I don't want to refer to it as important. Well, I know what case you're talking about. We know what case. Right. You can argue the – you certainly can argue the principles without – The principles. The case is kind of irrelevant. That's right. Exactly right. It's not authority. But it came up in the context of the mirror image of this. The state prosecutes a federal officer as opposed to the federal government prosecutes a state officer. And what the court grappled with was the issue of is the immunity claim of the federal officer severable from the claim of guilt or innocence? Because guilt or innocence, we all agree, goes to the jury. And the fact is that the constitutional issue of good faith immunity is not the same as guilt or innocence, as this court has pointed out in its civil decisions. In its civil decisions, Marquez, it's the same Eighth Amendment violation. And what the court said is you can have somebody who's guilty of the Eighth Amendment violation, okay, or could be. They could have a malicious state of mind. I'm going to shoot that person because he's black. Or I'm going to shoot that person knowing that they're doing nothing wrong, but they're in a situation which will allow me to shoot them. And I know they're not the real wrongdoer. I'm going to shoot them. This court has said that's a malicious state of mind that would amount to an Eighth Amendment violation. But it has said in Marquez if you find that a reasonable officer could look at that situation and say I am entitled to shoot in order to protect lives, that you never reach the question of malice. You never reach the question of malice. Malice, of course, to convict Lewis at a criminal trial, the jury would have to find beyond a reasonable doubt that he has malice. And that will always be an issue for them. But if a judge, and it's a judge who decides it, because a jury can't decide the good faith immunity or fair notice question because you can't educate. A jury doesn't get the history of Eighth Amendment jurisprudence of the United States Supreme Court or this court and decide under that whether a reasonable person interpreting that jurisprudence would have fair warning that their conduct violates the Eighth Amendment. Only a court can do that. Well, you may be true. You may be right. But the in-bank case just went to who is going to decide the facts. And the Ninth Circuit is distinguished from others after the facts are found, turns reasonableness over to the judge.  For what persuasive value it has, we could take a look at. Judge Kaczynski, in his lead opinion, makes a pretty persuasive argument of why it should be decided by the judge. But he didn't bring along 7 out of 11. Both the concurring opinion and the dissenters say, no, it should be a factual determination. So I'm not sure how much you gain from that issue. The other thing that bothers me is that Judge Kaczynski's lead opinion goes off on the basis that there should be the federal government has great precedence over the state. And he talked along those terms. Here we have the flip side. There the state was suing a federal officer. Here we have the federal suing a state officer. So the issue that Judge Kaczynski went off on doesn't help us at all here. I'm not sure where that in-bank case gets you. I might say that this is an issue upon which I have not made up my mind at all. So any help you can give me would be fine. Let me say this, Your Honor. There was a concurrence that said the issue should go to the jury. But my read is that the dissenters in that case said that immunity had been established as a matter of law in a pretrial context. They voted not to remand it but to find the federal officer immune as a matter of law on the facts before them. But the point that I was making in response to Judge Callahan's question is this, is that there is no one in that case, no one in that case took the position that the issue of immunity, an issue of immunity, federal immunity admittedly there under the Sovereignty Clause, can't be raised and decided in a criminal case pretrial. And the fact is this is a Rule 12 issue. In fact, Your Honor, I will point out that Rule 12 explicitly states, explicitly enumerates among the issues to be decided in a Rule 12 proceeding is immunity. And you're saying that in some cases this could be quite a complicated process. Well, you have ñ I've been involved in evidentiary hearings, pretrial evidentiary hearings involving fact-finding that takes two months. The fact that an appropriate pretrial motion ñ we had Castigar hearings in this case and in another related case that took a very long time, and the judge had to do a lot of fact-finding about the nature of the evidence, trial evidence, to determine whether the source of it was independent from the Castigar violation. So the ñ Mr. Reddin, I have a kind of a different issue.  The question I have is not whether you would have it at trial and who would make the decision, but whether that decision is appealable on an interlocutory basis. That seems to me to be somewhat distinct. And I read Lanier, of course, like you, we've probably all read it too many times now, trying to figure out the parallels with our civil side. But it seems to me that fair warning and immunity from suit in the civil side are not 100% parallel and that there is an element of animus and malice in the 242 context that you don't have in basically now under the civil immunity side. So my question is if there ñ are they really parallel in your view? And would you agree that Section 242 has a different aspect because of the animus and kind of willfulness aspect to it that you don't have on the civil side? Well, no, Your Honor, not in an Eighth Amendment context, because in order to prove an Eighth Amendment violation on the civil context, you have to prove precisely the same mens rea that you have to do in a criminal context. In fact, in this case, Your Honor, when it was tried the first time, all of the definitions of the Eighth Amendment violation were drawn from Whitley v. Albers. So there is no difference in terms of the Eighth Amendment violation. But we don't use ñ you know, the civil side isn't restricted to Eighth Amendment violations. That's true. So are you saying that there would be a special rule where there's an Eighth Amendment violation? All that I'm saying is that whether you actually commit an Eighth Amendment violation is the same on the civil and criminal side. But, Your Honor, let me point out this. It is true fair warning and good faith immunity are different in this sense. Every citizen has a right to fair warning. The good faith immunity is a doctrine that was designed by the Supreme Court to protect public officials. So I am not saying that fair warning is completely extensive in all ways with good faith immunity. But I am saying that if the good faith immunity claim is on the criminal side, deals with a public official, or put it this way, if the fair warning claim deals with a public official who's claiming good faith immunity, then the two are equivalent. Okay. So let me just say, though, what you're really saying is if we have an Eighth Amendment-type violation with a public official in a fair warning situation, then that should be appealable. Well, yes. So are you saying that every fair warning case should be appealable or only ones that fit into some narrow category? Just help me on that yes or no. Let me do it very directly. I am saying that not every fair warning claim involves a public official. It's the public official claims that the Supreme Court has said these officials must have a right to an interlocutory appeal. Well, they didn't quite say that. In civil cases, they absolutely did. In civil cases, yes. Okay. What I'm saying is that the policy that the Supreme Court has enunciated, that public officials are not to be subjected to liability claims without the right to an interlocutory appeal on good faith grounds, applies with complete congruence to the criminal side. Okay. So just to be clear then, the rule you would have us write would be in a 242 claim involving a public official, there's a right to an interlocutory appeal. Would there be any other provisos or narrowing? When that official is claiming immunity under the same good faith cases that the Supreme Court has said justify an interlocutory appeal on the civil side. Let me put it this way. Mr. Lewis is claiming a right to an interlocutory appeal under Marquez in which this Court has said when you have a Marquez situation, you absolutely have a right to an interlocutory appeal on the civil side. All of the policies there, all of the policies apply equally to civil and criminal cases because the policy is not to have a defense. The policy is to be immune from trial. And the reason, if there's such a thing as good faith immunity in a criminal case, you have to have an interlocutory appeal because we all agree, as was being debated in the prior case, that the issue is does the protection go away if you wait until the end of trial? And if the protection is immunity rather than a defense, the only way it can be protected is through an interlocutory appeal. Well, I sort of, just reading between the lines here, it would seem that what really doomed your client were the statements that he made after the shooting in terms of that made it seem that he, but then there was evidence that came out later that he couldn't have seen who the people were. There were comments made about that the guy deserved it because of his particular status as a prisoner. But there isn't, it's not clear in the record whether he even knew who the person was before he shot him. So what you're saying is obviously that's kind of a, it's sort of a bombshell for a jury because the things that he said seemed, were reflected pretty negatively on him. But if he didn't really know them at the time that he shot the person, then I guess it was reversed initially because the shooting review board said that he shot within, there was a warning shot, there was fighting, all of those things seem to be undisputed facts. Are you, you're basically saying this is the type of situation that cries out for it because the jury really can't deal with these type of issues? What I'm saying is that in Marquez, and this court was very explicit, it said if you take the plaintiff's view of this, this guy might have looked down and said, oh, that fellow down there is not a troublemaker and I'm going to shoot him in the leg anyway. And it said we can't resolve that question because that goes to whether there's really an Eighth Amendment violation. But we have held that a shot fired from this distance when there's a prison disturbance going on, we've got to let reasonable officers make those judgments. It's a reasonable situation. And that is indistinguishable here because one thing about this case, I mentioned on Rule 12 you could have a complex hearing. There's a simple truth here. The seven facts that we base our claim for immunity are absolutely indisputed by the government. They have filed trial briefs. They have said again and again that, A, there was a fight going on, B, that there was a shouted warning, C, a warning shot. And everybody in prison knows if you don't get down with a warning shot, what comes next? D, that Willis stayed down and Long got up. E, that the shot was fired from a distance of over 340 feet. They have conceded that there was no conspiracy theory. This isn't something where they're alleging, well, it wasn't reasonable because there was a frame-up to begin with to shoot him. They abandoned that when it fell out. And the other conceded fact is that the shooting review board found this to be an objectively reasonable shooting. We don't need a trial. It's disingenuous if the government gets up and says we don't know what the facts are because their trial brief says it. This case has been tried once already. The CASA, if you look at your excerpt of record, you will find each of the things that I just said conceded in the government's trial brief or in their brief before this Court. So this is a situation in which we are looking at a, if Marquez did not, or Gutierrez was the officer, if he could not be held liable for an Eighth Amendment violation under this Court's decision in Marquez, Marquez will control the definition of the Eighth Amendment violation given in the criminal case because we use the Court's Eighth Amendment jurisprudence. Why is Lewis being put on trial if we know that he cannot be found guilty under the good faith or fair warning doctrine? And the reason is, and I say this with great respect for the trial judge, the trial judge did not correctly understand this Court's decision in Marquez. She stated it was a strange case, and that's in the RER page. And then she stated what Marquez is about is that the Ninth Circuit found that there was no evidence that the guard himself knew that this fellow might not be a troublemaker. And Marquez says we have to accept the plaintiff's evidence that maybe the guard did know he wasn't a troublemaker. What we are deciding is the immunity question, whether an objective officer, not this one, whatever his mental state may have been, could have believed that his conduct was constitutional, we find that it was. And the district court felt that immunity was congruent with or the presence or absence of immunity was determined by the presence or absence of malice. And that is precisely what Marquez says is not true. And this Court, there are some unpublished opinions, but Marquez has, as I was sitting in an oral argument where one was arguing, the judges said Marquez now is the landscape of Eighth Amendment jurisprudence in these shooting cases. Do you want to reserve some time? I'd like to reserve, it looks like two minutes. May it please the Court, my name is Erica Frick and I represent the United States in this matter. To start out, I wanted to take up Judge McEwen's question about whether the fair warning doctrine and the qualified immunity doctrine are parallel. They are not parallel.  And the Lanier case, although it draws a connection between the two doctrines, the fundamental flaw with the defendant, with Lewis's argument in this case, is that it conflates substance and procedure. The comparison that's drawn in Lanier is that the substantive scope of the fair warning doctrine is similar to the substantive scope of the qualified immunity doctrine. But the two doctrines have always been applied differently in their respective contexts. The fair warning doctrine has always applied to all defendants, not just public officials. It has not been the subject of interlocutory appeals. And it has been applied in the context of the regular criminal trial context with all of its attendant rules and procedures. Well, if you, just assuming that some sort of immunity or fair warning applies, how do you distinguish Marquez? Marquez actually is a very short opinion that doesn't go into a lot of detail. First of all, it's in the civil context, so you have the summary judgment-type procedures which allow the court there to even reach factual findings, and we don't have that here. We don't have a record of facts here that the district court could have relied on in reaching factual conclusions in terms of the merits. But more importantly than that, I think this Court's decision in Jeffers is very enlightening in terms of showing that Marquez, that the district court did accurately interpret Marquez in saying that the issue of intent wasn't really an issue there. There wasn't an allegation that there was an impermissible intent like there was in this case. In this case, the government's theory, obviously, is that the guard shot the inmate because he was a child molester, and that sort of issue wasn't in play in Marquez. In Marquez, it was a real misdemeanor. But how do you get around all that? But, I mean, obviously, when you move away from that you're not alleging a conspiracy, how do you get away from all the undisputed facts here? I mean, I think the argument that he's making, that's exactly why there should be qualified immunity to prevent prosecutors from, you know, with all the undisputed facts here, and if you assume that an officer could think that they would have a right to shoot under those circumstances, which he's making a fairly compelling argument, why should prosecutors be able to decide that, well, I think there's some other reason that he had in his mind? Well, Judge Callahan, there are actually two reasons. One, there is no undisputed factual record in this case on the merits. There was a prior trial, but the government is not bound by that. And in terms of the Castigar hearing, that goes to the source of the evidence. The government has not in any way been required to disclose its theory for the upcoming trial or all of its evidence or anything like that. What are the disputed facts? Well. It struck me that the facts that you need for this particular defense are pretty well given. What is the disputed fact? Well, that actually leads into my second point, which is certainly what one fact that is clearly disputed is the intent, and this gets back to Marquez and why it's distinguishable. That's the intent of the defendant. When you're talking about whether or not a person has fair warning or immunity, you're talking about a reasonable person in the same position given particular facts. Intent is not involved. Well, this is actually where Jeffers is very enlightening, and I would refer to the court to the Penn site as 9-11 in the Jeffers decision. I think this is important enough that I'm going to go ahead and read it. It says, Although a defendant's subjective intent is not relevant to the qualified immunity defense, his mental state is relevant where it is an element of the alleged constitutional violation. As noted earlier, to prevail on the motion for summary judgment, Jeffers must put forward specific non-conclusory factual allegations that establish improper motive causing cognizable injury. So he has to allege facts in this case that demonstrate that appellants shot at Jeffers or permitted him to be shot because of an unconstitutional motive or state of mind, and the distinction that Jeffers draws is it's not enough for the inmate or the government to allege that just a pure allegation that there was an improper motive. However, if there is evidence to support that, as there will be in this case when the government has its chance to present the evidence at trial, then the subjective intent is relevant. Well, in a way, this begs the question of our jurisdiction, because we have jurisdiction to review qualified immunity cases and civil cases, and we get them up here and then we sort through things like Jeffers, and sometimes we remand them and say, go to trial. We can't decide it in advance. I guess my question is a more fundamental both policy and consistency question. We have in a couple of cases permitted interlocutory review, for example, in double jeopardy, because in effect it's an immunity from suit similar to the civil context. And there has been a case where there was a congressman who was charged with bribery, and he had congressional immunity. So, again, we let that come up on an interlocutory appeal. So those were really, I guess, carved out exceptions in the criminal context. Why wouldn't we simply extend that parallel to the case of public employees under 242? Well, first of all, immunity is really a misnomer. Lewis uses that term in his briefs, but this isn't immunity. It's fair warning. It's a doctrine that's been around for ages. And to call it immunity is to mischaracterize the doctrine. The kinds of immunity where it's been decided separately in the criminal context are things like supremacy clause immunity or the examples that you gave, Judge McKeown, where the issues are separate from the merits. And, actually, I wanted to bring the court's attention to that. Are you saying that because of this second element, that the merits and the fair warning are so intertwined that you can't separate them here? That's right. And under the criminal rule 12b-2, it makes it very clear that if they are intertwined, that it's not to be decided by a pretrial motion that would be subject to interlocutory review. And the D.C. Circuit has actually addressed this very question in a case called Coulter, which I apologize was not cited in the government's brief. And there it had a congressman. But would you please, upon leaving, provide the citation to Mr. Reardon and also to the clerk, and she'll provide us a copy. It involves a case where a congressman was claiming immunity both under the speech or debate clause and a similar theory to what Lewis is raising here. And whereas the court permitted an immediate appeal on the speech or debate clause because that was a specific type of constitutional immunity that wasn't going to be something that could be covered in the merits of the trial, it declined to exercise interlocutory jurisdiction over the fair warning claim. Instead, the same congressman's claim that the charges against him are broad and derogation of his right in common with us all to due process of law will not ordinarily be subject to interlocutory appeal, however. Post-conviction review is deemed adequate to vindicate that right, and it has a helpful site to another D.C. Circuit decision. But that seems like it puts the congressman with everyone else in that category. I mean, being up on a guard tower and doing the job of a correctional officer is really very different than what everyone else does. I mean, this is like truly a unique situation, because the reason that a lot of these immunities come about, we could never get people to do these jobs if they were always going to be able to be sued for people like us sitting there 20-20 hindsight saying, well, you know, you shouldn't have shot or, you know, things along those lines. Well, the law has always drawn a sharp distinction between the civil and the criminal context, probably in part because civil suits are brought by private citizens for pecuniary reasons. There is a very low pleading standard in the civil context, so much more likely that you'll have suits that are not meritorious. In the criminal context, you have all sorts of safeguards that you don't have in the civil context, such as the probable cause finding, the grand jury indictment, and all the different safeguards along the way. And the Supreme Court has said, and even in Abney, a case cited by Lewis, they have said that the adherence to the rule against interlocutory appeals has been particularly stringent in criminal prosecutions because the delays and disruptions attended upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law. The civil and criminal contexts are not the same, and the two doctrines are not the same as applied in the two contexts. Their substantive scope is similar, but in terms of how they're applied, in terms of procedure, they're very different in all of them. Would you go back on the, you know, it seems in some respects that it would be decided here based on this intertwining argument. And as I heard Mr. Lewis's argument, he said they're not really intertwined, that you've got really a separation here. You say they are intertwined.  Well, the classic example of an issue that's not intertwined would be the supremacy clause type immunity, where the issue there is was this person acting in the scope of their federal duties, which clearly can be separated from the merits of did they commit this criminal offense. In our situation, it's true that qualified immunity adds an extra element to the normal civil inquiry. It adds the element of making sure that the law was clearly established so that you're not punishing someone who wouldn't have realized that their conduct was, could subject them to liability. But before you get to that, you have to decide if there's a constitutional violation in the first place, and that is the merits. In under Section 242 and under Section 1983. Okay. I'm having trouble now because now you, as you explained it to me, I would say, well, it must be, sounds exactly like 1983. Is there a constitutional violation? Of course, that's a question of law. So now I'm having trouble understanding why 242 intertwines the merits, but qualified immunity does not. They both involve the merits. The difference, both 242 and 1983, you have to make a determination of whether there's been a constitutional violation. And the qualified immunity. That's a question of law, correct. Can be. But in this case, for example, it's not because the disputed issue of intent is central to determining whether there's a constitutional violation. So even if you assumed that all of these arguments were right, that Lewis is making, he still wouldn't be entitled to what he's calling qualified immunity because there's disputed issue of intent. And under Jeffers, he wouldn't qualify for it anyway. But I guess even if you assume all the facts that you could prove, if that still didn't make it a crime, he's basically saying that he should be entitled to not have to go to trial for that. It is clearly established in the law prior to this conduct here that you cannot shoot a prisoner just because he's a child molester, just because you see an opportunity if there's not some other legitimate justification for it. And in this case, the government's argument is that there was no legitimate justification. This was a pretext. And he did shoot Long because he believed him to be a child molester. That is clearly illegal, and there's no argument, there's no reasonable argument that it isn't. So is it on account of these impermissible factors that makes it intertwined here? The impermissible factor being you can't shoot somebody just because, one, you don't like them, or, two, they're a child molester. No, that's what makes it an issue that couldn't be determined on qualified immunity even in the civil context. What makes it intertwined is just the fact that you cannot determine whether there's qualified immunity in the first place without first deciding if there's a constitutional violation. And if you've decided that there is or isn't a constitutional violation, you've already gone to the merits of either the 1983 or the 242 claim. That's what makes them intertwined. So it's not a separate issue like the Supremacy Clause immunity where you can separately decide was this person acting in the scope of their federal duties. Well, say at the conclusion of your case, let's say you go to trial, and at the conclusion of your case that Mr. Lewis's counsel makes a motion to the court, are you saying the court can't say, well, there's no crime here? That would be the proper procedure for Lewis to follow here. That's been the proper procedure that's always been followed in fair warning cases, is to either challenge the indictment itself or, when the evidence is all in, to say, you know, in light of the evidence that's here, what was done was not a crime. And he would be able to make that, but that would be after all the evidence comes in, and then the judge would be in a position to actually make the determination that the evidence didn't rise to the level of being a criminal offense. Well, leave aside that you think that there's this factual issue here. If we had a situation where we know what the rule is, and the rule is you can't shoot people because they're child molesters, and we had undisputed facts so we could benchmark it against that rule to decide yes or no there's a constitutional violation, why shouldn't we decide that before putting the public official through trial? Well, that's, I mean, this all goes back. In other words, maybe if I just accept your view in this case it doesn't work, then we'd, of course, have to figure that out. But first we'd have to have jurisdiction to do that. So I'm saying let's take a case where you can't make that argument just because the facts don't permit you to even make the argument. Is that something that should come up to us on interlocutory appeal so that we can preclude the government from taking a public official through trial? No. The reason is, again, the fundamental differences between the civil and the criminal context. In the criminal context you don't have an undisputed factual record. In the civil context, after the parties go back and forth with their various motions and pleadings and they come up with undisputed facts, facts are submitted, the other side has to either dispute them or not dispute them, and you have a slate of undisputed facts.  These are people that get charged with a crime when they're doing their job. I mean, we're not talking about opening this up to all defendants. These are not your usual defendants. I mean, these are people that get to have guns at work, you know, that have certain policies. I mean, they are public officials that have authority that the general person does not. It's not the same as if he shot this person because he were a child molester out on the street. I mean, that's a different situation than someone that's up in the gun tower and there's a fight in the yard. Right, but to apply the qualified immunity doctrine in the criminal context would be an unprecedented extension of that doctrine to a brand-new context, and the fair warning doctrine that's always existed in the criminal context applies to all defendants. So this wouldn't be – if that's how the fair warning doctrine would be construed, this would apply to everyone. It wouldn't just apply to the guard up in the gun tower. It would apply to all criminal defendants. Well, I think he was suggesting that were we to go with his client's view, it would apply in the case of public officials because of the parallel with civil immunity. He wasn't suggesting, I think, that it would need to be written in a way that it would apply to all defendants. And that would be a brand-new rule that no court has ever adopted. As you say this case, would the entire issue be given to the jury? My understanding is that when fair warning issues have come up in various circuits, different courts have handled it differently. Some courts have made some legal determinations ahead of time, but that usually goes into – usually either limits what kind of evidence can be put in or is put into the jury instructions in terms of instructing the jury that this is the law as it's clearly established and that sort of thing. So various motions can be made in the – Is the jury to make this determination? The jury sometimes makes the determination. The judge sometimes makes the determination. What would be the difference? It hasn't – just to be frank, the courts haven't been entirely consistent about it. What's the position of the government? That legal questions can be resolved by the judge, and those can be expressed in jury instructions. So what's the government's position in this case, that it would go to the jury with instructions to make this determination? Well, I mean, depending on what the evidence was and depending on what kind of motions the defendant might make. If the evidence is so far in dispute, there's absolutely no way any decision can be made before. It's all got to go to the jury. That's the government's position, you've asserted. Right. So the jury instructions would have to reflect an accurate view of the law that would reflect the fair warning doctrine. So in this, there would be absolutely no way that that decision could be made pre-jury determination. It would have to go – all of the issues would go to the jury with jury instructions. In this case, that's right, because there's nothing in the – Lewis has conceded there's nothing facially wrong with the indictment. There could be a case where the indictment would be legally insufficient, though. The indictment what? Could be legally insufficient, as in it didn't really – what it charged wasn't really a crime, and then you would have a fair warning problem. But then you could have a motion to dismiss the indictment. Apparently, in the first trial, the government didn't want the evidence to come in that the Shooting and Review Board had found that he had legally – that he had legally acquired under the circumstances, and we reversed on that. So, I mean, that certainly does seem like relevant evidence. Well, that's for the second trial. Yeah, that's not an issue. There's nothing appealed on that here, is there? No. Okay, I think you've extended your time. We'll hear on rebuttal. Very quickly, I think what the last 20 minutes have demonstrated is the government has a hobson's choice. There's an intellectually coherent position, which is that good faith immunity has nothing to do with criminal cases, nothing, nothing. The defendant can't argue it's a judge, a jury, nobody. The problem with that is the United States Supreme Court has said you enjoy the same protection for public officials, same protection, there's a quote, from civil liability that they do from criminal liability. So they've got to acknowledge that the doctrine operates. Then it gets messy. If it's an issue for the jury, it would only be an issue for the jury if it's an issue of guilt or innocence. But it's not. The issue of guilt or innocence is the malice issue. But the issue of what a reasonable person would do is a constitutional question that isn't in any way the same as guilt or innocence. That's what Marquez says. So it says, well, okay, but maybe it doesn't go to a jury. Maybe it goes to a judge on a Rule 29. Why if, if, and I submit it's the case, if Marquez on the facts right now results in a finding of qualified immunity in the civil context, and if at some point in the case the defendant has the right to raise that in the criminal context, why would it wait to a Rule 29 when Rule 12 expressly states that immunity is an issue to be raised on a Rule 12 motion? So the problem that they have is that they really don't want this issue in the case at all. They want this to be a case. Go in there. If the shooting was malicious, that's the only thing. We prove that to the jury. That's the end of it. It's got nothing. This qualified immunity business, which is a reasonable standard, has nothing to do with the criminal case. But then they're running straight into the problem of Lanier saying that the same protection exists on the criminal context as the civil context under these mirror doctrines. Thank you. Thank you. You presented us a difficult case, no doubt. But thank you both for your arguments, and the case is now submitted. Thank you. The next case for argument is United States v. Viara.
judges: Wallace, McKeown, Callahan